IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FRANK D. WUTERICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-1366 (RMC) |
| | ) | |
| JOHN MURTHA, | ) | |
| Congressman, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION TO SUBSTITUTE DEFENDANT AND DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the United States of America and Congressman John Murtha, through undersigned counsel, respectfully request that this Court (1) issue an Order substituting the United States as the defendant in this action and (2) dismiss this case for lack of subject matter jurisdiction. In support of this motion, defendant respectfully refers the Court to the attached memorandum in support of this motion and accompanying exhibits. A proposed Order is also attached.

May 7, 2007                              Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


_____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
555 Fourth Street, N.W. - Civil Division
Washington, D.C.  20530
(202) 307-1249
(202) 514-8780 (facsimile)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRANK D. WUTERICH, )<br>)<br>            Plaintiff, )<br>)<br>    v.                                                                    )   No. 06-1366 (RMC)<br>)<br>JOHN MURTHA, )<br>    Congressman, )<br>)<br>            Defendant. )<br>_____) | |

**MEMORANDUM IN SUPPORT OF MOTION TO
SUBSTITUTE DEFENDANT AND DISMISS PLAINTIFF'S
CLAIM FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff brings his tort claims against a United States Congressman for comments made by the Congressman in the scope of his employment to the press. Accordingly, this Court should substitute the United States as the sole defendant in this action and dismiss plaintiff's claims for lack of subject matter jurisdiction.

**PLAINTIFF'S CLAIMS**

Plaintiff's complaint contains three claims – libel, invasion of privacy/false light, and republication of defamatory statements by third parties. Plaintiff names as the sole defendant United States Congressman John Murtha. The claims arise out of statements that Congressman Murtha made in press interviews concerning his official position on the war in Iraq, specifically relating to an incident in Haditha, Iraq involving the death of civilians. The complaint alleges that, "[s]ince May 2006, John Murtha, without waiting for the results of ongoing official military investigations designed to determine the true facts and which he was personally aware of, has repeatedly, for reasons best known to him, publicly and falsely accused the involved Marines,

including plaintiff Frank Wuterich, of cold-blooded murder and war crimes.  Additionally, he has accused Marines of participating in a cover-up of the events of that day."  Compl. p.1.

The press interviews by Congressman Murtha about which the complaint complains include: (1) a May 19, 2006 CNN interview with Wolf Blitzer; (2) a May 30, 2006 CNN interview with Anderson Cooper; (3) a May 30, 2006 CNN interview with Wolf Blitzer; and (4) a May 30, 2006 NPR interview with Alex Chadwick.  Id. ¶¶ 26, 36.  In the course of these interviews, Congressman Murtha spoke about the Iraq war and the Haditha incident.  Id. ¶¶ 26, 36.

During these interviews, it is undisputed that Congressman Murtha did *not* identify Staff Sergeant Wuterich by name, and his counsel has acknowledged such.  See Kimberly Hefling, Marine Sues Congressman for Defamation, ABC News, Aug. 2, 2006 (available at http://abcnews.go.com/Politics/wireStory?id=2265606 and attached hereto as Exhibit 1).  The complaint alleges, however, that because SSgt. Wuterich allegedly had been publicly identified as the leader of the squad of Marines involved in the Haditha incident, "any comments uttered about what happened that day inexplicably apply to him in the eyes of the public."  Compl. ¶ 17.

The complaint also alleges that Congressman Murtha "has spread false and malicious lies about SSgt. Wuterich and his squad of Marines . . . [which] have been reproduced by countless third parties throughout the world;" that the Congressman's statements gave the impression that "Wuterich and others deliberately murdered innocent Iraqi civilians in a cold-blooded massacre . . .[which] if true, could constitute a criminal act . . . these accusations alone constitute libel per se.  The statements are libelous and false . . . [and have] caused harm to SSgt. Wuterich and others by tarnishing his reputation."  Id. ¶¶ 23, 24.  Similarly, the complaint alleges that the

"false misleading and defamatory/slanderous statements were intentionally published and promoted by Murtha with malice, gross negligence, and/or with reckless disregard as to whether they are true of false." Id. ¶ 27. The complaint also alleges that Congressman Murtha's "statements have invaded SSgt. Wuterich's privacy and placed him in a false light," and "SSgt. Wuterich has been, among other things, embarrassed, mortified, and humiliated before the general public and has suffered emotional distress." Id. ¶¶ 36, 37. The complaint further alleges that since Congressman Murtha "first went public with statements condemning the Haditha tragedy . . . various third parties have and are still continuing to repeat, either in writing or verbally, the false and misleading and defamatory statements tainting SSgt. Wuterich," and the Congressman "is liable for any republication by third parties which were reasonably foreseeable and/or the natural and probable consequences of the original publications . . . Mr. Murtha intended, knew or should have known that third parties would repeat and publish his false, misleading and defamatory accusations." Id. ¶¶ 39, 40.

Finally, the complaint alleges that Congressman Murtha made the statements "outside the scope of his employment as a U.S. Congressman and intended to serve his own private purpose and interests." Id. ¶¶ 20, 21, 23. As support for this contention, SSgt. Wuterich asserts that Congressman Murtha "had no legitimate need-to-know of any information relating to the specific circumstances of the Haditha investigations," and "no other member of Congress who was provided with information pertaining to the Haditha investigation has thought it appropriate to publicly comment." Id. ¶¶ 18, 21.

SSgt. Wuterich seeks general, specific, compensatory and punitive damages greater than $75,000; a public retraction and apology; an injunction prohibiting further publication of any allegations regarding plaintiff; and costs, attorney's fees and other relief. Id. ¶ 43.

Although not set forth in the complaint, SSgt. Wuterich has officially been charged with thirteen counts of unpremeditated murder by the United States for the Haditha incident about which Congressman Murtha spoke to the press. See Josh White & Sonya Geis, 4 Marines Charged In Haditha Killings, Wash. Post, Dec. 22, 2006 at A01 (available at http://www.washingtonpost.com/wp-dyn/content/article/2006/12/21/AR2006122100124.html), Paul von Zielbauer & Carolyn Marshall, Marines Charge 4 With Murder of Iraq Civilians, N.Y. Times, Dec. 22, 2006 (available at http://www.nytimes.com/2006/12/22/world/middleeast/22haditha.html?ex=1324443600&en=73b55dd735d2c643&ei=5090&partner=rssuserland&emc=rss).

## CONGRESSMAN MURTHA

Congressman Murtha has represented the 12th Congressional District of Pennsylvania since 1974. See Biography of John Murtha (available at http://www.house.gov/murtha/bio.shtml and attached hereto as Exhibit 2). He is a member of the House Committee on Appropriations and, since January 2007, the Chairman of the Appropriations Committee's Subcommittee on Defense. Id. Prior to the commencement of the 110th Congress in January 2007, Congressman Murtha was the Ranking Member of the Subcommittee on Defense. Id. Congressman Murtha is a former Marine and has long been acknowledged as an expert in military matters and a leading House voice on defense matters. Id.

On November 17, 2005, Congressman Murtha issued two official press releases from his Congressional office, in which he criticized the conduct of the war in Iraq and called for the redeployment of U.S. troops from Iraq. See Exhibit 3. Also on November 17, 2005, Congressman Murtha introduced a joint resolution, H.J. Res. 73, which would require the redeployment of troops from Iraq. See Exhibit 4; Exhibit 5 ¶ 3 (Declaration of Cynthia Abram ("Abram Decl.")). One-hundred five other House Members co-sponsored H.J. Res. 73, which was referred to the House Committee on International Relations and Armed Services.

Since then, Congressman Murtha has been a vocal critic of the war in Iraq and has, on numerous occasions, publicly criticized the conduct of the war and called for the redeployment of troops from Iraq. See Exhibit 6. As perhaps the most outspoken war critic among all Members of Congress, Congressman Murtha, in his official capacity as a Congressman, has frequently been invited by media outlets to share his views on the war. Abram Decl. ¶ 4. The interviews referred to in the Complaint are all examples of this. See Compl.; Abram Decl. ¶ 4. In each case, the producer of the news program directed his or her request for an interview with Congressman Murtha to Ms. Cynthia Abram, then Congressman Murtha's Communications Director. Abram Decl. ¶ 4. Following the request from the media outlets to Ms. Abram, Ms. Abram would place the interviews on Congressman Murtha's official Congressional calendar. See Abram Decl. ¶ 4; Exhibit 7 (Congressman Murtha's Official Congressional Calendar).

CNN's Wolf Blitzer conducted the May 19, 2006 with Congressman Murtha at CNN's Washington, DC studio. Abram Decl. ¶ 5. The three interviews conducted on May 30, 2006 (by CNN's Wolf Blitzer and Anderson Cooper, and NPR's Alex Chadwick) were taped using the news producers' remote broadcasting equipment while the Congressman was in his

Congressional District during a District work period. Abram Decl. ¶ 5. According to Ms. Abram, these three interviews were actually conducted in the Congressman's campaign office, which is located on the first floor of the building in which the Congressional District Office is also located. Abram Decl. ¶ 5. The interviews were conducted in the campaign office not because they were campaign related, but for the convenience of the broadcasters; it was easier to set up equipment on the first floor. Abram Decl. ¶ 5.

## ARGUMENT

### I.   12(b)(1) STANDARD

Defendant moves for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of jurisdiction over the subject matter. "In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Thompson v. Capitol Police Board, 120 F. Supp.2d 78, 81 (D.D.C. 2000) (citations omitted); see also Vanover v. Hantman, 77 F. Supp.2d 91, 98 (D.D.C. 1999). "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." Rann v. Chao, 154 F. Supp.2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir. 2004). In addition, "[on] a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence." Thompson, 120 F. Supp.2d at 81; Vanover, 77 F. Supp.2d at 98.

To resolve a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic

information, and ultimately weigh the conflicting evidence to determine its jurisdiction.  See id.;

Rann, 154 F. Supp. at 64.

## II.  THE UNITED STATES SHALL BE SUBSTITUTED AS THE SOLE DEFENDANT IN THIS ACTION

When a federal employee is sued for a wrongful or negligent act, the United States Attorney General, or by designation the United States Attorney in the district where the claim is brought (or his designee), may certify that the employee was acting at the time within the scope of his or her employment.  See 28 U.S.C. § 2679(d)(1).  Specifically, this statute provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).  In short, where the Attorney General's designee certifies that the original defendant was acting within the scope of his employment, the certification constitutes prima facie evidence that the employee was acting within the scope of his employment.  See Council on Am. Islamic Relations v. Ballenger, 444 F.3d 659, 662 (D.C. Cir. 2006) (citing Kimbro v. Velten, 30 F.3d 1501, 1509 (D.C. Cir. 1994)).[1]  Once the Court determines that the employee acted within the scope of his employment, such a determination (1) requires the substitution of the United States for the federal employee as the defendant in the lawsuit; and (2) converts the lawsuit into an action against the United States under the Federal Tort Claims Act

---

[1] A plaintiff may seek judicial review of a scope of employment certification under the Westfall Act by "coming forward with specific facts rebutting the certification."  Ballenger, 444 F.3d at 662.  See also Gutierrez de Martinez v. Lamagno, 505 U.S. 417, 434 (1995); Stokes v. Cross, 327 F.3d 1210, 1213 (D.C. Cir. 2003).

("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq.; see also Haddon v. United States, 68 F.3d 1420, 1423 (D.C. Cir. 1995); Vanover, 77 F. Supp.2d at 97.

Included with this Motion to Dismiss is the Certification of Rudolph Contreras, Civil Chief, United States Attorneys Office for the District of Columbia, certifying that defendant John Murtha was acting within the scope of his authority as an employee of the United States at the time of the alleged incident.  See Exhibit 8.  Accordingly, the suit becomes one against the United States under the FTCA.  See Haddon, 68 F.3d at 1423; Gustave-Schmidt v. Chao, 226 F. Supp.2d 191, 200 (D.D.C. 2002).

Not only does the Certification of Civil Chief Contreras support the claim that Congressman Murtha was acting within the scope of this employment when he made the allegedly defamatory statements, but the law and facts of this case also support such a conclusion.

Under the Federal Tort Claims Act, as amended by the Westfall Act, 28 U.S.C. §§ 2671 et seq., the question of whether a federal employee is acting within the scope of his employment is determined by the law of the state where the alleged tort occurred.  See 28 U.S.C. § 1346(b); Haddon, 68 F.3d at 1423.  In this case, Congressman Murtha made the allegedly defamatory statements in Washington, D.C. and in Pennsylvania.  Accordingly, this motion analyzes the scope of employment question under the law of both jurisdictions.

    **A.    Under District of Columbia Law, Congressman Murtha was within the Scope of his Employment**

Under D.C. law, a person acts within the scope of his employment if the conduct (1) is of a kind he is employed to perform; (2) occurs substantially within authorized time and space limits; and (3) is actuated, at least in part, by a purpose to serve the master.  Haddon, 68 F.3d at

1423-24 (citing Restatement (Second) of Agency § 228). The District takes a very, very broad view of "scope of employment." See, e.g., Johnson v. Weinberg, 434 A.2d 404 (D.C. 1981) (finding that a reasonable juror could find a laundromat employee was acting within the scope of his employment when he shot a customer over a missing shirt); Lyon v. Carey, 533 F.2d 649 (D.C. Cir. 1976) (jury reasonably found that mattress deliveryman acted within scope of employment when he raped a customer to whom he was delivering a mattress). Congressman Murtha easily satisfies this test here.

     First, the official duties of Members of Congress extend well beyond purely legislative activities, and include such activities as preparing newsletters to constituents, issuing news releases, making speeches outside Congress, and giving interviews to the press. See, e.g., U.S. v. Brewster, 408 U.S. 501, 512 (1972). In fact, in Ballenger, the D.C. Circuit expressly affirmed that speaking to the press is within the scope of a congressman's authorized duties. 444 F.3d at 665. Indeed, Williams v. U.S., 71 F.3d 502 (5th Cir. 1995), held that "a primary obligation of a Member of Congress in a representative democracy is to serve and respond to his or her constituents." Id. at 507. Communicating with constituents through television and radio interviews and the like about important national issues is thus a normal and routine part of a Member's representational duties. See Ballenger, 444 F.3d at 665; Chapman v. Rahall, 399 F. Supp. 2d 711, 714 (W.D. Va. 2005) (congressman's "remarks, made to the media to ensure his effectiveness as a legislator, can 'fairly and reasonably be deemed to be an ordinary and natural incident or attribute' of his job as a legislator"); Operation Rescue National v. U.S., 975 F. Supp 92, 107 (D. Mass 1997), aff'd, 147 F.3d 68 (1st Cir. 1998).

Second, although the allegedly defamatory statements in Washington D.C. were made away from his congressional office, Congressman Murtha, like other Members, often conducts his official duties at locations away from his office.  <u>See, e.g.</u>, <u>Operation Rescue</u>, 975 F. Supp. at 107 (allegedly defamatory remarks by senator in his home district and following a fundraiser were within scope of his employment).  It is, of course, routine for Members of Congress to speak to journalists outside the Members' offices.  <u>Id.</u>  This is particularly true of broadcast journalists who often conduct interviews of Members in their studios for obvious reasons.  As noted above, the Murtha interview conducted in Washington, D.C. on May 19, 2006, was on the Congressman's official calendar for that day.

Third, the purpose of Congressman Murtha's comments about the Haditha incident was quintessentially official, in that he was articulating his views on a current policy issue of great national interest and import:  the turmoil in the Middle East, the deployment of American military forces in Iraq, and the pressures on those forces.  Congressman Murtha, as explained above, understands the significance of these issues and holds very strong views about how they should be addressed.  He believes, in particular, that the U.S. troops in Iraq are under tremendous pressure and should be redeployed from Iraq.  His comments on the Haditha incident must be understood in that context.

Even had Congressman Murtha also been motivated, in part, by some personal consideration – <u>e.g.</u>, a desire to enhance his re-election prospects – that would not alter the outcome here because the courts, quite appropriately, have refused to parse through Members' statements in order to determine a "predominant" motive.  In <u>Operation Rescue</u>, for example, Senator Kennedy, in the course of speaking to the press after participating in an event to raise

funds for an upcoming re-election campaign, stated that certain legislation was needed because "'we have a national organization like Operation Rescue that has as a matter of national policy firebombing and even murder.'" 975 F. Supp. at 94-95. Senator Kennedy, who was sued for defamation by Operation Rescue, took the position that he was acting within the scope of his employment when he uttered those remarks. The district court held that, even if Senator Kennedy were motivated in part by a personal desire to advance his re-election prospects, it was not appropriate for the court, in making the scope of employment determination, to attempt to determine a "predominant" motive for an elected official's remarks:

> In our electoral system . . . such public and personal motives are essentially inseparable because it is natural for public officials to believe that their own success . . . [is] inextricably linked to the public interest.

Id. at 95. Rather, the court said, only when an official acts from "purely personal motives that were in no way connected to his official duties" would the official be held to have acted outside the scope of his employment. Id. See also W. Prosser & W. Keeton, *Torts* 506 (5th ed. 1984) (only if an employee "acts from purely personal motives in no way connected with the employer's interests, [is he] considered in the ordinary case to have departed from his employment"); Ballenger, 366 F. Supp.2d at 32 (dismissing suit against Member who was alleged to have defamed plaintiff organization in the course of discussing the status of his marriage with a reporter because "the Congressman was acting, at least in part, for the purpose of preserving his effectiveness [as a legislator and representative] . . . ."). Obviously, Congressman Murtha was not acting from a "purely personal motive" here.

### B. Under Pennsylvania Law, Congressman Murtha was within the Scope of his Employment

Under Pennsylvania law, an employee's conduct is within scope if it "(1) . . . [is] of the kind [the employee] was employed to perform; (2) . . . occur[s] substantially within the authorized time and space limits; and (3) . . . [is] actuated, at least in part, by a purpose to serve the [employer]. Shuman Estate v. Weber, 419 A.2d 169, 173 (Pa. Super. 1980). When considering these factors, "the totality of the circumstances must be considered." Kemerer v. U.S., 330 F.Supp. 731, 733 (W.D. Pa. 1971). Typically, a jury will determine the scope issue. However, "where the facts are not disputed . . . the question of whether or not the [employee] is within the scope of his or her employment is for the court." Ferrell v. Martin, 419 A.2d 152, 155 (Pa. Super. 1980). These factors are substantially the same as the Haddon factors, and therefore, for all the reasons articulated above, Congressman Murtha was also acting within the scope of his employment as a matter of Pennsylvania law.

### III. PLAINTIFF HAS NOT PRESENTED HIS CLAIM TO THE APPROPRIATE FEDERAL ENTITY AS REQUIRED BY THE FTCA

Once the United States is substituted as the sole defendant, the suit continues against the United States with all of the defenses available to it as a sovereign. 28 U.S.C. § 2679(d)(4). Sovereign immunity bars all suits against the United States except in accordance with the explicit terms of the statutory waiver of such immunity. Cox v. Secretary of Labor, 739 F. Supp. 28, 30 (D.D.C. 1990); see also United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Mitchell, 445 U.S. 535, 538 (1980); Kline v. Republic of El Salvador, 603 F. Supp. 1313, 1316 (D.D.C. 1985). Absent clear congressional consent to entertain a claim against the United

States, the District Court lacks authority to grant relief.  Testan, 424 U.S. at 399; United States v. Sherwood, 312 U.S. 584, 586 (1941).

The Federal Tort Claim Act is a limited waiver of sovereign immunity for certain monetary claims against the United States.  This Act, however, imposes certain limitations on a party's ability to bring suit against the United States and, absent full compliance with the conditions placed upon waiver of that immunity, the Court lacks jurisdiction to entertain tort claims against the United States.  GAF Corp. v. United States, 818 F.2d 901, 917-18 and n.86 (D.C. Cir. 1987).  One such condition, contained in 28 U.S.C. § 2675, provides in relevant part:

> An action ***shall not*** be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his employment, ***unless*** the claimant ***shall have first presented the claim to the appropriate Federal agency*** and his claim shall have been finally denied.

28 U.S.C. § 2675(a); see also Simpkins, 108 F.3d at 371 (discussing requirements as to non-libel and slander claims); GAF Corp., 818 F.2d at 904 n.7.  The rationale is as follows: "[n]otice of an injury will enable the agency to investigate and ascertain the strength of a claim; the sum certain statement of damages will enable it to determine whether settlement or negotiations to that end are desirable."  Id. at 919-20.  This requirement is jurisdictional and cannot be waived.  Hohri v. United States, 782 F.2d 227, 245-46 (D.C. Cir. 1986), reh. denied, 793 F.2d 304 (D.C. Cir. 1987), rev'd on other grounds sub nom., United States v. Hohri, 107 S. Ct. 2246 (1987).

The FTCA mandates that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing by certified or registered mail of notice of final denial of the claim by the agency to which it was presented."

13

28 U.S.C. § 2401(b) (emphasis added); Kubrick v. United States, 444 U.S. 111, 117-18 (1979) (noting that Courts are not to extend this waiver of sovereign immunity beyond what Congress intended). Although phrased in the disjunctive, "this statute requires a claimant to file an administrative claim within two years [of accrual] and file suit within six months of its denial." Houston v. United States Postal Serv., 823 F.2d 896, 902 (5th Cir. 1987) (emphasis in original) (citing numerous cases). See also Willis v. United States, 719 F.2d 608, 612 (2d Cir. 1983); Schuler v. United States, 628 F.2d 199, 201 (D.C. Cir. 1980).

The FTCA required that Plaintiff file an administrative claim with the United States House of Representatives prior to instituting this action. 28 U.S.C. § 2401(b). Plaintiff has not done so. See Declaration of John Filamor ¶ 3 (attached as Exhibit 9 hereto). Accordingly, plaintiff has failed to exhaust his administrative remedies and this action should be dismissed for lack of subject matter jurisdiction. Kubrick, 444 U.S. at 117-18.

## IV. THE UNITED STATES HAS NOT WAIVED SOVEREIGN IMMUNITY FOR THE CLAIMS ADVANCED BY PLAINTIFF

The FTCA exposes the United States to liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The provisions of section 1346(b), however, are subject to certain express exceptions for which the waiver of sovereign immunity has not been extended. See 28 U.S.C. § 2680. Specifically, § 2680(h) of Title 28 excepts from the waiver "[a]ny claim *arising out of* assault, battery, false imprisonment, malicious prosecution, abuse of process, *libel*, *slander*, misrepresentation, deceit, or interference with contract rights." See 28 U.S.C. § 2680(h) (emphasis added).

Plaintiff in this action alleges libel, invasion of privacy/false light, and republication of defamatory statements by third parties. Because the libel claim is expressly exempt from the FTCA's waiver of sovereign immunity, it must be dismissed for lack of subject matter jurisdiction. Ballenger, 444 F.3d at 666. Similarly, because plaintiff's invasion of privacy/false light and republication of defamatory statements by third parties claims "arise out of" libel and slander, these claims must also be dismissed for lack of subject matter jurisdiction. Edmonds v. United States, 436 F. Supp. 2d 28, 35 (D.D.C. 2006) ("Courts consistently have held that claims for "false light" invasion of privacy are barred by the libel and slander exception.") (Collyer, J); Metz v. United States, 788 F.2d 1528, 1535 (11th Cir. 1986) (Because "the government officials' allegedly slanderous statements are essential to Mr. Metz's action for false light privacy and Ingrid Metz's claim for intentional infliction of emotional distress . . . these claims . . . 'arise out of' slander for the purposes of § 2680(h) and are not actionable under the FTCA.").

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court substitute the United States as the sole defendant in this action and dismiss plaintiff's claims in their entirety for lack of subject matter jurisdiction.

May 7, 2007				Respectfully submitted,


				_____/s/_____
				JEFFREY A. TAYLOR, D.C. Bar # 498610
				United States Attorney


				_____/s/_____
				RUDOLPH CONTRERAS, DC BAR #434122
				Assistant United States Attorney


				_____/s/_____
				JOHN F. HENAULT, D.C. Bar # 472590
				Assistant United States Attorney
				555 Fourth Street, N.W. - Civil Division
				Washington, D.C. 20530
				(202) 307-1249
				(202) 514-8780 (facsimile)