**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FRANK D. WUTERICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 06-1366 (RMC) |
| | ) |
| JOHN MURTHA, | ) |
| Congressman, | ) |
| | ) |
| Defendant. | ) |

**REPLY IN SUPPORT OF MOTION TO SUBSTITUTE DEFENDANT
AND DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
AND OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE**

Plaintiff's opposition to defendant's motion to substitute and dismiss for lack of subject matter jurisdiction fails for several reasons. First, although plaintiff asserts that he needs discovery to determine if Congressman Murtha's press interviews were conducted for his own private interests, neither plaintiff's complaint nor his opposition specify any possible private interests that could have been served by the press interviews. In fact, the only possible interests that plaintiff sets forth in his opposition are Congressman Murtha's interest in drawing attention to the Haditha incident and in becoming House majority leader, neither of which are private interests for a sitting Congressman.

Next, plaintiff has not shown any reason why the facts which are allegedly in dispute would have any bearing on whether Congressman Murtha's interests were private. It is inconsequential as a matter of law whether Congressman Murtha initiated the contact with the media or whether there was specific legislation pending. Also, there is no need for elaboration on where the interviews took place – even if the location of the interviews is relevant, the interest that plaintiff's opposition implies that Congressman Murtha has is still a permissible

interest for a sitting Congressman in the scope of his employment. Plaintiff also asserts that there may be other, unknown interviews relevant to his claim that could be motivated by personal interests on Congressman Murtha's part. This comment is pure speculation and fails to support a request for discovery; plaintiff does not and cannot allege any facts supporting a claim that there are in fact other interviews motivated by personal reasons, and, instead, offers only unsupported speculation. In sum, discovery based upon unsupported speculation is not proper.

Finally, in light of the fact that the only "private interests" alleged by plaintiff to have possibly motivated Congressman Murtha are acceptable public interests, plaintiff has failed to rebut the prima facie scope certification of Civil Chief Rudolph Contreras. Accordingly, the United States should be substituted as the sole defendant in this matter and the case should be dismissed.[1]

## ARGUMENT

**I.      Plaintiff Fails to Show Any Possible Private Interest of Congressman Murtha's That Would Cause the Interviews to Exceed the Scope of His Employment**

To obtain discovery and an evidentiary hearing, plaintiff is required to "have alleged sufficient facts that, taken as true, would establish that [defendant's] actions exceeded the scope of [his] employment." Stokes v. Cross, 327 F.3d 1210, 1215 (D.C. Cir. 2003). Plaintiff fails to allege any private interest of Congressman Murtha that would show that these interviews exceeded the scope of his employment. The only interests that plaintiff's opposition referred to were Murtha's interests in "draw[ing] attention to the horrendous pressure put on our troops in Iraq and to the cover-up of the incident" and in assuming the role of Majority Leader. Pl. Opp.

---

[1] Plaintiff concedes that, if the United States is substituted as the sole defendant, this action must be dismissed for lack of subject matter jurisdiction. See Pl. Opp. at 10.

at 20, 21.  However, as a matter of law, an interview conducted to further either of these interests is within the scope of a public official's employment.

First, it is clear that the question at issue is whether the actual interviews conducted by Congressman Murtha, and *not* the allegedly defamatory statements, are the kind of conduct Congressman Murtha was employed to perform.  See Council on Am. Islamic Relations v. Ballenger, 444 F.3d 659, 664 (D.C. Cir. 2006).  In these interviews, Congressman Murtha conveyed information on and his opinions about the Haditha incident and the Iraq war.  This information is a matter of public interest and, therefore, interviews that convey this information are *not* conducted for purely private reasons.  Id. at 665.  In Ballenger, a congressman's divorce was a matter of public interest because at least some subset of his constituents were interested in the divorce.  Id.  Similarly, any information and Congressman Murtha's personal feelings about the Haditha incident and the Iraq war in general are clearly a matter of public interest because anything involving the war in Iraq will be of interest to at least some subset of Congressman Murtha's constituents.

Conveying this information to the media is within the scope of Murtha's employment because it is part of his obligation as a Member of Congress "to serve and respond to his . . . constituents."  Id.  It is well accepted that the duty of a public servant to convey information to his constituents is job related if it is related to matters of important public policy.  It is also the duty of a public official to articulate his views on such issues and explain why he holds such views.  There can be no dispute that Congressman Murtha believes U.S. troops should be redeployed from Iraq, and that this re-deployment should be the policy of the United States.  To this end, Congressman Murtha used the Haditha incident to illustrate why he holds such views.

Since Congressman Murtha was trying to serve his constituents by participating in these interviews, they were within the scope of his employment.

Furthermore, these interviews were within the scope of his employment because Congressman Murtha was trying to "ensure his effectiveness as a legislator." Id. (quoting Chapman v. Rahall, 399 F. Supp. 2d 711, 714 (W.D. Va. 2005)). In Ballenger, the congressman's comments about his divorce helped ensure his effectiveness as a legislator because any misconceptions his conservative constituency might have had about his divorce could have inhibited his "long-term ability to continue advancing his legislative agenda in Congress." Id. Similarly, Congressman Murtha was attempting to ensure his effectiveness as a legislator by drawing attention to the Haditha incident because it could have advanced his legislative agenda in Congress. As explained in defendant's motion, Congressman Murtha previously introduced a resolution which would require the redeployment of troops from Iraq. By giving interviews about these issues, as well as other issues relating to the war in Iraq, Congressman Murtha might influence public opinion, which in turn would influence members of Congress. It is irrelevant whether drawing attention to this incident in this manner was effective, or even appropriate, because it only matters that Congressman Murtha's conduct is motivated, at least in part, "by a legitimate *desire* to discharge his duty as a congressman." Id. (emphasis added); see Pl. Opp. at 17-18. Therefore, if Congressman Murtha's media comments about the Haditha incident were motivated by an interest to draw attention to this incident and its "coverup," then it was within the scope of his employment.

Plaintiff's opposition also claims that Congressman Murtha's comments were made outside the scope of his employment because they were motivated by a desire to be House

Majority Leader.  This "personal motive," however, is inseparable from Congressman Murtha's public motives because "it is natural for public officials to believe that their own success . . . are inextricably linked to the public interest." Operation Rescue National v. United States, 975 F.Supp. 92 (D. Mass. 1997) (holding that remarks made by Senator Kennedy to the media were motivated by a public interest even if they were done in part to gain popularity, raise campaign funds, and win votes), aff'd, 147 F.3d 68 (1st Cir. 1998).  Obviously, Congressman Murtha believed at the time that becoming majority leader would serve the public interest and the interests of his constituents.  Moreover, because becoming majority leader would enhance Congressman Murtha's power within Congress, it too would enhance his ability to advance his legislative agenda.  Therefore, even if Congressman Murtha made these comments to the media to increase his chances of becoming Majority Leader, this is ***not*** a private interest outside the scope of his employment.  Thus plaintiff has alleged no facts that, if true, would defeat the Motion to Substitute Defendant and Wuterich is not entitled to discovery.

**II.    None of the Factual Disputes Alleged by Plaintiff Would Have Any Bearing on Whether Congressman Murtha Was Motived By a Private Interest**

Plaintiff claims that at least limited discovery is warranted because there are questions that require elaboration, including what steps Congressman Murtha took to initiate media interviews and where and when did all of such interviews take place.  However, no elaboration is needed to clarify these facts because they have no bearing on whether Congressman Murtha was attempting to further a private interest.  Also, any distinction that Plaintiff tries to make between this case and other scope of employment cases are similarly inconsequential.

Plaintiff claims that Congressman Murtha's actions are distinct from the actions of other members of Congress who have been found to be acting within the scope of their employment

because reporters initiated the contact in those other cases. First of all, plaintiff does not explain why this is relevant, and also, this distinction is not accurate. In <u>Ballenger</u>, the congressman called the reporter himself to clarify an issue he felt would be important to his congressional career representing a conservative district. <u>Ballenger</u>, 444 F.3d at 661. This initiation of contact is no different than what Congressman Murtha would have done if it were true that he was not "responding to an unsolicited reporter's inquiry." Pl. Opp. at 16. In both cases, the congressmen had a desire to use the media to further a public interest and they contacted members of the media to do so.[2] Plaintiff also attempts to distinguish this case because there was no pending legislation when Congressman Murtha made the comments, but there was no pending legislation in <u>Ballenger</u> either.

Plaintiff also claims that it is necessary to determine where all the interviews took place and that the fact that one such interview took place in Murtha's campaign office indicates that they were outside scope of employment because "the campaign office is politically separate from that of a congressman's district or Washington, D.C. office." Pl. Opp. at 17. First, as explained in the declaration of Cynthia Abrams, the interviews were scheduled in the campaign office solely because the campaign office is located on the first floor and, for the convenience of the reporters, it was easier for them to set up their equipment on the first floor rather than carry it to the second floor. More importantly, even if it were true that Congressman Murtha was motivated to conduct the interviews for his campaign, as a matter of law, this is permissible. See <u>Operation Rescue</u>, 975 F.Supp. at 95. In <u>Operation Rescue</u>, Senator Kennedy made his

---

[2] Plaintiff cannot escape the fact that the interviews Congressman Murtha conducted with the press were scheduled by his Congressional staffers on his official Congressional calendar, not by his campaign staff or on his campaign calendar.

6

comments to the media outside a campaign fund-raising event. Id. at 94. However, the court held that his comments were still motivated in part to inform the public of his position on a legislative matter and again, since such personal motives are considered by public officials to be in the public's interest, his actions were within the scope of his employment. Id. at 95. The court stated that it is not necessary or appropriate to attempt to determine the predominant motive for such remarks. Id. Therefore, it is acceptable in the scope of his employment that Congressman Murtha held an interview in his campaign office.

Plaintiff also claims limited discovery is required to determine whether any additional interviews took place and to discover all the facts surrounding these interviews. First, this claim is founded on nothing but speculation. Moreover, plaintiff fails to explain how additional interviews where Congressman Murtha would be discussing the same incident at Haditha would have different motivations behind them, and again, plaintiff did not claim any interest that Congressman Murtha could have been attempting to further that would take his actions outside the scope of his employment. Therefore, there are *no* relevant disputed facts and plaintiff has alleged no facts that, if true, would tend to show that Congressman Murtha acted outside the scope of his employment as a Congressman. Thus, there is no need for even limited discovery.

### III. Plaintiff Fails to Rebut the Certification that Congressman Murtha was Acting with the Scope of his Employment

As explained in defendant's motion to dismiss, where the Attorney General's designee certifies that the original defendant was acting within the scope of his employment, the certification constitutes prima facie evidence that the employee was acting within the scope of his employment. See Ballenger, 444 F.3d at 662 (citing Kimbro v. Velten, 30 F.3d 1501, 1509

(D.C. Cir. 1994)).[3] The United States certified that Congressman Murtha was acting within the scope of his employment when he conducted the interviews in questions with the Certification of Rudolph Contreras.[4] Thus, to successfully challenge a scope certification, plaintiff must come "forward with specific facts rebutting the certification." Ballenger, 444 F.3d at 662. See also Gutierrez de Martinez v. Lamagno, 505 U.S. 417, 434 (1995); Stokes v. Cross, 327 F.3d 1210, 1213 (D.C. Cir. 2003). Even plaintiff admits that to successfully rebut the certification he must establish facts rebutting the certification by a preponderance of the evidence. See Pl. Opp. at 13, n.5.

Although plaintiff attempts to rebut the certification of Rudolph Contreras by asserting that the interviews at issue were motivated by private interests, as explained above, those allegations fail as a matter of law.[5] Accordingly, plaintiff has failed to rebut the scope certification and this Court should substitute the United States as the sole defendant in this action and dismiss the case for lack of subject matter jurisdiction.

---

[3] A plaintiff may seek judicial review of a scope of employment certification under the Westfall Act by "coming forward with specific facts rebutting the certification." Ballenger, 444 F.3d at 662. See also Gutierrez de Martinez v. Lamagno, 505 U.S. 417, 434 (1995); Stokes v. Cross, 327 F.3d 1210, 1213 (D.C. Cir. 2003).

[4] Contrary to plaintiff's claim that the scope certification should be stricken from the record, there is nothing improper in either form or substance about the certification. Striking a certification because plaintiff does not like the outcome it dictates is not sufficient.

[5] Although plaintiff attaches to his opposition a case from the District of Maryland, that case is inapposite, particularly in light of the D.C. Circuit's holding in Ballenger.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court substitute the United States as the sole defendant in this action and dismiss plaintiff's claims in their entirety for lack of subject matter jurisdiction. Similarly, the United States requests that the Court deny plaintiff's motion to strike the certification of Rudolph Contreras.

July 9, 2007                              Respectfully submitted,


                                          _____/s/_____
                                          JEFFREY A. TAYLOR, D.C. Bar # 498610
                                          United States Attorney


                                          _____/s/_____
                                          RUDOLPH CONTRERAS, DC BAR #434122
                                          Assistant United States Attorney


                                          _____/s/_____
                                          JOHN F. HENAULT, D.C. Bar # 472590
                                          Assistant United States Attorney
                                          555 Fourth Street, N.W. - Civil Division
                                          Washington, D.C.  20530
                                          (202) 307-1249
                                          (202) 514-8780 (facsimile)