UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FRANK WUTERICH | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 06-1366 (RMC) |
| | * | |
| JOHN MURTHA | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING APPEAL

Plaintiff Frank Wuterich ("Wuterich") brought this action against Congressman John Murtha ("Congressman Murtha") on August 6, 2006 for libel, invasion of privacy/false light, and republication by third parties. The case challenges spurious self-serving statements made by Congressman Murtha that accused Wuterich and others of having committed horrific crimes while serving as U.S. Marines in Haditha, Iraq on November 19, 2005.

Those statements of Congressman Murtha that are known at this time primarily occurred during May 19-30, 2006 and have been subsequently republished by third parties, especially throughout the Internet.

Having been ordered by this Court to participate in limited discovery, including appearing for a deposition, Congressman Murtha has continued his efforts to extricate himself from any responsibility for his personal actions and has appealed the Court's interlocutory determination. As a result, the United States Government, still acting on behalf of Congressman Murtha, now seeks a last minute stay of the Court's decision.

## PROCEDURAL BACKGROUND

Congressman Murtha filed a Motion to Dismiss based on scope of employment immunity on May 7, 2007. Following the completion of briefing the Court held oral arguments on September 28, 2007, at which time it issued a decision denying, without prejudice, Congressman Murtha's Motion so that limited factual discovery could take place.

Wuterich submitted Requests for Production of Documents on or about October 3, 2007, and issued a Notice of Deposition on or about October 23, 2007. The deposition was scheduled to take place on November 27, 2007.

On November 16, 2007, Congressman Murtha filed a Notice of Appeal with the U.S. Circuit Court for the District of Columbia. The appeal was followed by a Motion to Stay Discovery that was filed on November 20, 2007.

## ARGUMENT

Congressman Murtha offers three arguments, two procedural and one substantive, to justify his stay request: (1) that he retains the procedural ability to immediately appeal the September 28, 2007 Order ("Order") denying his Motion to Dismiss; (2) that the Court should adopt as automatic – or at least as the rule instead of the exception – the notion that discovery should be suspended pending an appeal on the issue of immunity; and (3) that a balancing of the circumstances supports the issuance of a stay pending appeal. See Defendant's Memorandum in Support of Motion to Stay Pending Appeal ("Def's Memo") at 2-3. For the reasons stated below, all of these arguments must fail.

**I.  CONGRESSMAN MURTHA IS NOT ENTITLED TO IMMEDIATELY APPEAL THE SEPTEMBER 28, 2007 INTERLOCUTORY ORDER**

Congressman Murtha argues that the subject of appeal in this case is the issue of absolute immunity from suit. Id. Because of the "nature of the right at stake," he seeks to claim a procedural right to immediately appeal the interlocutory denial of a Motion to Dismiss on immunity grounds. Id., citing Behrens v. Pelletier, 516 U.S. 299, 309 (1996).

Congressman Murtha misconstrues the nature of the Order at issue. The Court's Order did not deny his immunity, nor did it even opine on the nature of that immunity. As Congressman Murtha's Motion even explains the Order denied the Government's Motion to Substitute Defendant and Dismiss for Lack of Subject Matter Jurisdiction ("Defendants' Motion to Dismiss") *without prejudice* and authorized discovery on the Westfall scope certification issue. Def's Memo at 2 (emphasis added). This interlocutory order does not prevent Congressman Murtha from re-filing another Motion to Substitute Defendant and Dismiss for Lack of Subject Matter Jurisdiction once discovery has been completed.

As the D.C. Circuit recently reiterated in Banks v. Office of the Senate Sergeant-At-Arms & Doorkeeper of the United States Senate, 471 F.3d 1341 (D.C. Cir. 2006), Congress has limited the jurisdiction of the appellate circuits to the review of "*final* district court decisions". Id. at 1344, citing 28 U.S.C. § 1291 (emphasis added). Indeed, the D.C. Circuit has consistently chosen to construe the final judgment rule strictly, "repeatedly noting that a district court's decision is ordinarily not final until it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." In Re Sealed Case (Medical Records), 381 F.3d 1205, 1209 (D.C. Cir. 2004), quoting

3

Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712 (1996)(internal quotation marks omitted).

In light of this position, Congressman Murtha relies on the exception to the final judgment rule – 28 U.S.C. § 1292(b). Def's Memo at 3. This provision – which the courts prefer to describe as more of a "practical construction" than an exception – permits circuit court review of appeals from interlocutory orders when "a district judge certifies that an order involves a controlling question of law as to which there is substantial ground for difference of opinion, and further finds that an immediate appeal from the order may materially advance the ultimate termination of the litigation". Banks, 471 F.3d at 1345 (internal quotation marks omitted); Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546 (1949)("This decision appears to fall in that *small class* which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.")(emphasis added).

In setting forth the criteria for the Collateral Order Doctrine, the Supreme Court has identified three factors that must be satisfied to warrant appeal of an interlocutory order: (1) it must conclusively determine the disputed question; (2) resolve an important issue completely separate from the merits of the action; and (3) be effectively unreviewable after final judgment. Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978); Will v. Hallock, 546 U.S. 345, 349-50 (2006)(noting that the enumerated conditions are *stringent*, and that unless they are kept so, the underlying doctrine will overpower the substantial finality interests § 1291 is meant to further)(internal quotations omitted)

(emphasis added). As the D.C. Circuit has acknowledged, failure to satisfy even one of the factors is sufficient to deny appellate jurisdiction. Banks, 471 F.3d at 1346.

To succeed in the instant case, therefore, Congressman Murtha has to demonstrate that an interlocutory order permitting limited discovery to determine whether he was acting within the scope of his employment when he made his remarks about the Marines' conduct in Haditha warrants immediate appeal. This he cannot do. In fact, the Banks Court even went so far as to state that "[t]here is ample precedent in this Circuit for taking an appeal of a discovery order *after* entry of judgment." Id. at 1346-47 (emphasis added), citing Nat'l Ass'n of Crim. Def. Lawyers v. United States DOJ, 182 F.3d 981, 985 (D.C. Cir. 1999); Bonds v. District of Columbia, 93 F.3d 801, 807-08 (D.C. Cir. 1996)).

As is elaborated further below, permitting discovery to continue will neither upset the status quo nor irreparably harm Congressman Murtha, especially since he will likely be deposed as part of court-martial proceedings in the criminal cases that have arisen from the Haditha events. Unlike the situation the D.C. Circuit recently faced in Diamond Ventures, LLC. v. Barreto, 452 F.3d 892, 896 (D.C. Cir. 2006), where permitting the enforcement of a protective order would have granted plaintiff access to records that would have caused irreparable competitive harm to plaintiff's competitors,[1] permitting enforcement of the Order in the case at hand will not force Congressman Murtha to produce information or otherwise be significantly "burdened" by litigation. Therefore, there is no good reason to hold the Order in question as "unreviewable" on the grounds

---

[1] The Court noted that the harm would be irreparable *only* because of the fact that the protective order permitted access to Diamond Venture's principals and employees. Diamond Ventures, LLC, 452 F.3d at 897 (emphasis added). There was no competitive harm alleged by permitting Diamond Venture's attorneys to have access. Id. at 894.

5

that permitting its enforcement now could allegedly cause harm that could not be undone on appeal.[2]

## II. CONGRESSMAN MURTHA HAS FAILED TO DEMONSTRATE THAT THE CIRCUMSTANCES SUPPORT THE ISSUANCE OF A STAY

Even if it is determined that Congressman Murtha can immediately appeal the denial of his Motion to Dismiss, he can not demonstrate that a stay pending appeal is warranted in this case. It is undisputed that the applicable standard of review of a motion for stay pending appeal consists of a four-factor balancing test considering: (i) the likelihood of success on the merits; (ii) whether the appellant will suffer irreparable injury if the stay is denied; (iii) whether the issuance of a stay will cause substantial harm to other parties; and (iv) the public interest. U.S. v. Phillip Morris, 314 F.3d 612, 617 (D.C. Cir. 2003). Congressman Murtha's assertions to the contrary, application of these factors does not militate in favor of a stay.

---

[2] Even if it is determined that Congressman Murtha has the right to immediately appeal the denial of his Motion to Dismiss and that the subject of the appeal is the issue of immunity, his assertion that he should be automatically entitled to a stay pending appeal is without merit. In support of this claim Congressman Murtha argues that since there is a right to immediately appeal when the issue at stake is the entitlement of immunity from suit – largely for the purpose of protecting government employees from the burdens of litigation – there should also be an automatic right to a stay pending appeal, lest the very same protection be sacrificed. Def's Memo at 3, citing Osborn v. Haley, 127 S.Ct. 881, 893 (2007). Agreement with Congressman Murtha would significantly expand the principles that surround this issue. It is no surprise that Congressman Murtha did not provide any applicable statutory or legal precedent that supports his premise for the simple reason that the policy has been to consider the viability of a stay pending appeal on a case-by-case basis rather than as an automatic rule. See e.g., SEC v. Steadman, 798 F. Supp. 733, 748 (D.D.C. 1991); Cuomo v. United States Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985). See also SEC v. Lines Overseas Mgmt., Ltd., 2006 U.S. Dist. LEXIS 6234, at *5-6 (detailing how the court conducted an *independent* review of the merits of the motion for stay, consisting of a *de novo* review without deference to the magistrate judge's determination)(emphasis added).

**A. Congressman Murtha Will Not Suffer Irreparable Harm**

Congressman Murtha argues that if a stay is not granted and he is required to be forced to endure what would likely not even be a four hour deposition he will be irreparably harmed, as the "very basis of the appeal and the harm sought to be protected against will have occurred". Def's Memo at 4, citing Mitchell v. Forsyth, 472 U.S. 511, 526-527 (1985). To support his argument, Congressman Murtha cites to opinions from several other circuits as evidence that it has become "universally held that Supreme Court decisional authority mandates a stay of discovery against individual defendants through appeal in cases in which a government official asserts an entitlement to qualified immunity". Def's Memo at 4. In particular, Congressman Murtha points to the First Circuit's analysis in Hegarty v. Somerset County, 25 F.3d 17 (1st Cir. 1994)(per curiam) as "representative" of the universally held precedent. Def's Memo at 4, quoting Hegarty, 25 F.3d at 18 ("But in light of the Court's later determination that a denial of qualified immunity is entitled to immediate appellate review, we believe that the stay of discovery, of necessity, ordinarily must carry over through the appellate court's resolution of that question, so long as the appeal is non-frivolous.").

Congressman Murtha's chosen "representative" case, however, has a considerable "chink in the armor". The First Circuit noted that the government officials in Hegarty conceded that the "district court, prior to its ruling on the issue of qualified immunity, *properly* ordered some discovery limited to that issue". Id. (emphasis added). What the officials in Hegarty were attempting to prevent from occurring with their motion for stay pending appeal on the issue of qualified immunity was the continuance of far more extensive discovery that was directed at the actual merits of the case. Id. That discovery

7

bore no relation to the issue of whether immunity should apply, as the district court had already properly permitted discovery. Rather, this next round of discovery was directed at determining whether the plaintiff was entitled to money damages; an issue as to which the Court noted a defense of qualified immunity was immaterial. Id. at 18, n.2.

Congressman Murtha's invocation of other Circuits' cases is additionally flawed in that he chose to rely on cases involving qualified, rather than absolute, immunity. Def's Memo at 4. Congressman Murtha is claiming absolute immunity, *not* qualified immunity. Id. at 2 (emphasis added). The difference between the two forms of immunity is more than one of pure semantics. Qualified, or "good faith", immunity "shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". Behrens, 516 U.S. at 305, quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)(internal notations omitted). It was the special, substantial costs incurred by litigating the "subjective good faith of government officials" that the Harlow Court found to be "peculiarly disruptive of effective government" and which formed the basis for its objective "reasonable person" standard for determining the applicability of qualified immunity. Id. at 815. The D.C. Circuit has followed that line of thought when considering the issue of discovery in qualified immunity cases. Siegert v. Gilley, 895 F.2d 797, 804 (D.C. Cir. 1990), aff'd on other grounds, Siegert v. Gilley, 500 U.S. 226 (1991).

Absolute immunity, on the other hand, is derived from the Westfall Act, 28 U.S.C § 2679(d)(2), and accords immunity to federal employees for claims arising out of acts they undertake in the course of their official duties. Osborn, 127 S.Ct. at 884. Unlike

qualified immunity, which deals with discretionary functions undertaken by a federal employee that therefore raises the implication of "good faith", absolute immunity determinations rest exclusively on whether the conduct falls within the employee's scope of employment. Such determinations are inherently factual, thereby often necessitating limited discovery to determine whether the employee's conduct was, at least in part, undertaken with a desire to "serve the master".

It should not go unnoticed as to exactly what Congressman Murtha is claiming will cause him irreparable harm: responding to a couple of dozen document production requests (most of which will likely lead to the production of no relevant documentation and be handled by his staff) and sitting for, perhaps, several hours through a deposition. In considering Congressman Murtha's claim, at least two important factors should be recognized.

First, not surprisingly, Congressman Murtha invokes the all-too-familiar red-herring specter of the dangerous legal precedent that would be permitted if discovery were to go forward because it would, allegedly, allow a "party to harass a member of Congress every time the Congressman makes a statement that the party does not like or otherwise deems offensive." Def's Memo at 7. Setting aside the fact, as explained above, that discovery was permitted in previous defamation lawsuits against congressional representatives and our system of government still stands, in the more than 200 years since the United States of America was created, very few Members of Congress have been civilly sued. In fact, since Westfall Certification has been required one can count the number of times a Member of Congress has been sued on one hand, and maybe two (due to the possibility

9

of unreported cases). Thus, no aspect of this case, and particularly where it pertains to limited discovery, should be considered as even potentially opening a Pandora's Box.

Congressman Murtha's assertions to the contrary, the comments in question here were not merely "offensive" or simply not liked. Instead, they constituted a direct assault on the integrity and legal status of a decorated Marine officer. By categorically asserting that Wuterich's squad "killed innocent civilians in cold blood", that "there was no hostile fire," and promoting an analogy of Haditha to the My Lai massacre (where hundreds of innocent women, children and the elderly were simply lined up against the wall and executed) during the Vietnam War prior to any legal determinations concerning criminal culpability by any competent court, Congressman Murtha's comments were not just offensive, they were outright libelous and inexcusable.

Second, there is a possibility that Congressman Murtha will be deposed or required to serve as a witness in the military courts-martial proceedings of those facing charges in the Haditha matter in order to explore how the very comments that are the subject of this lawsuit may have contributed to the notion of undue command influence. See Exhibit "1" at 26 (noting deposition of Congressman Murtha likely to be ordered as part of military proceedings).[3] Thus, while any deposition in the criminal matter would be distinct from a deposition in this civil case as the issues are broader in the former context, it minimizes

---

[3] Interestingly, Congressman Murtha was requested to voluntarily appear for a simple interview – in order to avoid a deposition – as part of the ongoing military criminal proceedings for Lcpl Stephen Tatum (who faces trial in Spring 2008). He declined to even offer minimal assistance in order to strengthen his perceived legal foundation for appeal in this civil lawsuit and extricate himself from any possibility of the deposition that was ordered by this Court. See Exhibit "2" ("An interview on this subject of the type you request may have an effect on this ongoing litigation and would not be appropriate.").

the argument that Congressman Murtha would suffer irreparable harm from participating in any deposition even while he pursues a legal appeal.

### B. Congressman Murtha Can Not Present A Strong Case on the Merits On Appeal

It has never been disputed by Wuterich – indeed it was openly noted by the undersigned counsel during oral arguments on the Motion to Dismiss – that, subsequent to discovery, it is entirely possible that Congressman Murtha may prevail on the legal arguments that apply to this case. However, as noted by the Court in rendering its decision to deny without prejudice Congressman Murtha's Motion to Dismiss, the *raison d'etre* for discovery in this case is to permit this Court the ability to actually determine the underlying question of scope of employment, and particularly whether a Member of Congress can ever go beyond the scope of his employment when speaking to the media.[4]

Congressman Murtha desires to pull the rug from under the Court by arguing that the specific facts are irrelevant to the determination so long as a Member of Congress was engaged in the kind of conduct for which they are employed to perform – such as giving press interviews on matters of public concern – and the Attorney General's designated representative has certified that the conduct was within the individual's scope of employment. Once those broad based determinations are promulgated by the defendant Congressman then the inquiry would stop and immunity from suit would be automatically accorded. Under that scenario, discovery would be inappropriate. Def's

---

[4] Congressman Murtha alleges that the Court "reflected that it was troubled by the idea of a Congressman being immune from lawsuits when they go to their home districts and say things about private persons." Def's Memo at 5. That is not the undersigned's recollection. Instead, counsel recalls the Court was hesitant to rule, as sought by the Government, that a Congressman is broadly entitled to immunity for anything stated to the media no matter where or when the conversation occurs.

11

Memo at 5-6.  Adoption of this manipulated line of thinking would unduly narrow the scope of employment inquiry in such a manner as to eviscerate judicial involvement in interpreting whether the overarching conduct – in this case participating in media interviews – was undertaken with the desire to "serve the master". Thus, Congressman Murtha would have this Court ignore the issue of whether the actual remarks made, not just the act of delivering the remarks, were done with the requisite intent to, even partially, "serve the master".[5]

To support his argument Congressman Murtha relies on the same previously cited cases that served as the basis for his original Motion to Dismiss before this Court wherein the Member of Congress' conduct was found to be within the scope of employment. Id. citing Council on American Islamic Relations v. Ballenger, 444 F.3d 659, 665 (D.C. Cir. 2006); Operation Rescue National v. United States, 975 F. Supp. 92, 107 (D. Mass. 1997), aff'd 147 F.3d 68 (1998); Chapman v. Rahall, 399 F.Supp. 2d 711, 714 (W.D. Va. 2005). And Wuterich's response remains the same now as it did previously before this Court: in each of these cases it appeared that at least some limited discovery was first permitted. Ballenger, 444 F.3d at 663, 665; Rahall, 399 F.Supp. 2d at 715; Operation Rescue, 975 F. Supp. at 98, 108;

---

[5] Of course, it should also be noted that Wuterich has in no way isolated his claims simply to those comments Congressman Murtha made to the media. Wuterich's Complaint satisfies the notice pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure. The whole notion of limited discovery surrounding the scope of employment question is also intended to determine whether Congressman Murtha disseminated defamatory statements to other third parties, to include non-media individuals, which could lead to substantive liability on his part. On what legal basis would Congressman Murtha be entitled to absolute immunity were he to have spoken to a long-time friend about Haditha at a family cocktail party? For all that Wuterich and this Court know such an incident occurred. That is exactly what discovery is designed to determine.

12

Congressman Murtha, unlike those of his colleagues in the above cases, has remained completely silent throughout this litigation allowing others, whether his former employees or his current Government counsel, to speak for him. There is no direct evidence placed before the Court that would allow it to determine the extent to which, if at all, Congressman Murtha's proven false comments about the Marines' conduct in Haditha were motivated by the desire to serve his constituents or otherwise "serve the master", or limited to public television appearances. It was due to this absence of information that this Court indicated its own need to allow limited discovery. See also Stokes v. Cross, 327 F.3d 1210, 1214 (D.C. Cir. 2003)(finding that discovery is permitted to resolve a material factual dispute regarding scope of employment).

Given the insufficient facts that Congressman Murtha has intentionally failed to place before this forum it is not at all unreasonable to conclude that his assertion that he has made a "substantial claim on the merits" justifying the issuance of a stay should be rejected. Def's Memo at 6-7, citing Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)).

Congressman Murtha directs this Court's attention to a recent ruling by Judge Bates on a similar motion to stay pending appeal as support for his argument. Jewish War Veterans v. Gates, 2007 U.S. Dist. LEXIS 82716 (D.D.C. 2007)(a copy of the decision is available at *https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2007mc0220-39*). The factual circumstances are distinguishable from the instant case. In Jewish War Veterans, Judge Bates chose to grant the defendant's motion to stay pending appeal with respect to documents responsive to the plaintiffs' discovery requests but regarding which a claim of *Speech or Debate Clause* privilege had been asserted. Id. at *26. Discovery had already

13

commenced and was actually ongoing, and the appeal was specifically related to the discoverability of a particular set of documents that were responsive to plaintiffs' discovery requests but concerning which the government was asserting a specific privilege to justify non-disclosure. Id. Judge Bates, in conducting his balancing test analysis, went so far as to highlight that preventing the disclosure of the particular set of documents would not cause substantial harm to the plaintiffs' ability to continue its overarching litigation in the San Diego District Court. Id. at *23 ("Although plaintiffs may indeed find information helpful to their case in the disputed documents, they have already filed a lengthy summary judgment motion in the San Diego District Court that appears to be amply supported by factual information.").

In contrast, in the instant case, preventing the commencement of discovery until Congressman Murtha's appeal on the issue of the scope of absolute immunity can be determined by the D.C. Circuit would prevent the production of *any* information by Congressman Murtha. Congressman Murtha is not cooperating with one hand while pulling back the other, but instead seeking to shut down this entire case so that no discovery takes place. Given that Congressman Murtha will not be irreparably harmed if the stay is denied and he does not have a likelihood of succeeding on the merits on appeal, it goes without saying that he has not made a "substantial claim on the merits" justifying the issuance of a stay.

### C.  Wuterich Will Incur Substantial Harm if the Stay is Granted

Congressman Murtha correctly notes that Wuterich has preserved his rights to conduct discovery and has agreed to temporarily postpone discovery until this Court has ruled on this Motion. Def's Memo at 7. That aside, neither fact supports the argument

14

that Wuterich will not be harmed if the stay is actually granted. Id. While the harm may not be specifically significant to Wuterich, at least the general notion of harm exists when an elected public official is able to delay proceedings which challenge that individual's allegedly improper and unlawful conduct.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion to Stay Pending Appeal should be denied.

Date:   December 4, 2007

        Respectfully submitted,

        /s/
        _____
        Mark S. Zaid, Esq.
        DC Bar #440532
        Bradley P. Moss, Esq.
        D.C. Bar #975905
        Mark S. Zaid, P.C.
        1250 Connecticut Avenue, N.W.
        Suite 200
        Washington, D.C. 20036